# EXHIBIT 2

# Fort v. Branch Banking & Trust Co. (In re JAT, Inc.)

United States Bankruptcy Court for the District of South Carolina

March 16, 2016, Decided; March 15, 2016, Filed

C/A No. 13-07552-HB, Adv. Pro. No. 15-80205-HB, Chapter 7

**Reporter**
2016 Bankr. LEXIS 841 *

In re, JAT, Inc., Debtor(s). John K. Fort, Trustee, Plaintiff(s), v. Branch Banking And Trust Company, Defendant(s).

**Counsel:** [*1] For JAT, Inc., Debtor (13-07552-hb): Robert H. Cooper, The Cooper Law Firm, Greenville, SC.

For John K Fort, Trustee (13-07552-hb): Joshua J Hudson, Roe Cassidy Coates & Price, PA, Greenville, SC.

JAT, Inc., Debtor (15-80205-hb), Pro se, Travelers Rest, SC.

For John K. Fort, Trustee, Plaintiff (15-80205-hb): Joshua J Hudson, Roe Cassidy Coates & Price, PA, Greenville, SC.

For Branch Banking And Trust Company, Defendant (15-80205-hb): Weyman C. Carter, McNair Law Firm, PA, Greenville, SC.

For John K Fort, Trustee (15-80205-hb): Joshua J Hudson, Roe Cassidy Coates & Price, PA, Greenville, SC.

**Judges:** Helen E. Burris, United States Bankruptcy Judge.

**Opinion by:** Helen E. Burris

## Opinion

**ORDER DENYING REQUEST FOR ENTRY OF JUDGMENT AND GRANTING MOTION TO SET ASIDE ENTRY OF DEFAULT**

**THIS MATTER** is before the Court for hearing on Plaintiff John K. Fort, Chapter 7 Trustee's request for entry of a default judgment and to determine damages ("Request for Entry of Judgment"),[1] as well as the Motion to Set Aside Default filed by Branch Banking and Trust Company, seeking to set aside the Clerk's Entry of Default ("BB&T Motion").[2] A contested hearing on these matters was held on March 1, 2016. Present at the hearing were Weyman Carter, counsel [*2] for BB&T, representatives from BB&T Rose Adams and Aleksandra Page, and the Trustee and his counsel, Joshua Hudson. For the reasons set forth below, the Court finds that the BB&T Motion should be granted and Plaintiff's Request for Entry of Judgment must be denied.

**PROCEDURAL HISTORY AND FACTS**

Debtor JAT, Inc. filed a voluntary petition for Chapter 7 relief on December 21, 2013. John Fort was appointed as the Chapter 7 Trustee. BB&T is a North Carolina insured depository institution that is qualified to do business in South Carolina. At the time of filing, BB&T was not a creditor of JAT and was not scheduled as a creditor in the

---

[1] ECF No. 6, filed Jan. 28, 2016.

[2] ECF No. 11, filed Feb. 4, 2016.

bankruptcy case. Consequently, BB&T did not file a proof of claim and was not included on the mailing matrix for notices in JAT's bankruptcy case.

Hudson, on behalf of the Trustee, issued a subpoena to BB&T on July 7, 2015, requesting the production of "[a]ll bank statements, canceled checks, deposit slips, back up information for all deposits and credits, signature cards, and any and all account records for all accounts in the name of JAT, Inc. from December 1, 2011 through present" (the "July Subpoena"). **[*3]** The July Subpoena was served via certified mail on BB&T's registered agent, CT Corporation System at 2 Office Park Court, Suite 103, Columbia, SC 29223. BB&T responded to the July Subpoena on or about August 5, 2015.

On or about November 10, 2015, Hudson sent another subpoena to BB&T requesting the production of "[a]ll comprehensive account statements, and any and all account records for all accounts in the name of the following from December 1, 2011 to present" and listed JAT as well as various individuals and entities affiliated with JAT, including prior owners of JAT (the "November Subpoena"). The November Subpoena was served via certified mail on BB&T's registered agent, CT Corporation System at 2 Office Park Court, Suite 103, Columbia, SC 29223. BB&T responded to the November Subpoena on or about December 2, 2015.

Hudson did not contact BB&T regarding the information received in response to the July or November Subpoena. Additionally, there was no evidence presented indicating that any demand for recovery of payments was made on BB&T that would aid in understanding the purpose of the subpoenas. The Trustee now asserts that BB&T's responses to the July and November Subpoenas are evidence of improper conduct because the document productions **[*4]** failed to include records of commercial credit cards and commercial notes in JAT's name, leaving the Trustee with the impression that there were no pre-petition debts owed to BB&T by JAT.

Adams, the Manager of BB&T's Deposit Compliance Department, testified at the hearing. She stated that records concerning the commercial credit cards and commercial notes in JAT's name were not included in the productions responding to the July and November Subpoenas because the language of the requests was interpreted as only requesting information pertaining to *deposit* accounts and the items produced were responsive only to those requests. Had information regarding loan or credit accounts been provided by BB&T, the evidence now indicates it would have been beneficial to BB&T. Adams testified that BB&T received approximately 8,000 subpoenas last year. Her testimony indicated that the July and November Subpoenas were given due attention and there was no evidence that any alleged shortcomings in BB&T's responses were anything more than a miscommunication or interpretation that differed from that of the Trustee. There is no evidence that BB&T gained any advantage from failing to provide information.

Hudson, **[*5]** on behalf of the Trustee, filed this adversary proceeding on December 18, 2015, seeking the avoidance and recovery of the transfer of $71,137.30 from JAT to BB&T that was allegedly property of the estate transferred during the two years preceding the petition date. The first cause of action alleges that BB&T is an unsecured creditor of JAT and the transfers to BB&T were made to pay an obligation due from a third party. The Trustee, as Plaintiff, seeks the recovery of those payments as fraudulent transfers pursuant to *11 U.S.C. § 548*[3] because he alleges they were made by JAT with actual intent to hinder, delay, or defraud existing and future creditors. The second cause of action seeks to recover the transfers to BB&T as preferences under *§ 547* in the event those payments were on account of an antecedent debt of JAT. The Complaint was filed shortly before the expiration of the statute of limitations for asserting a preference or fraudulent transfer action. See *11 U.S.C. § 546(a)*.

The Summons was issued on December 18, 2015, and provided that BB&T must file a motion or answer to the Complaint within 30 days, which expired on January 18, 2016.[4] The Summons **[*6]** warned that a failure to respond "will be deemed to be your consent to entry of a judgment by the bankruptcy court and judgment by default may be

---

[3] Further reference to the Bankruptcy Code, *11 U.S.C. § 101 et seq.*, shall be by section number only.

[4] ECF No. 2.

taken against you for the relief demanded in the complaint." Hudson filed an Affidavit of Service on December 23, 2015, which stated that the Summons and Complaint were personally served on BB&T by leaving a copy thereof with Lisa Culler "Paralegal with Registered Agent CT Corporation System" at 2 Office Park Court, Suite 103, Columbia, SC 29223 on December 22, 2015. CT Corporation System was BB&T's South Carolina registered agent as of December 22, 2015.

The Summons and Complaint were received by BB&T and assigned to Page on December 22 or 23, 2015. Page is a Banking Officer in BB&T's Bankruptcy Section who testified at the hearing. She stated that as soon as she received the Summons and Complaint, she called Hudson to inquire as to the allegations of the Complaint because she had no prior involvement with the July and November Subpoena and had not previously been notified of any potential issues with any accounts held by JAT, any transfers from JAT, or JAT's bankruptcy case.

In response, Hudson emailed Page on December 23, 2015, **[*7]** which began their email discussions of this action. On that date, Page informed Hudson that JAT "had other debts with BB&T such as credit cards and commercial note[s] where the payments were applied in the 2 years prior to the filing." On December 28, 2015, Page provided Hudson with copies of JAT's active accounts with BB&T as of the petition date and statements for the only active credit card in the name of JAT during the applicable time period, which was paid beyond the 90-day preference period.

In response, Hudson requested for his review records of all payments made by JAT to BB&T and to which account they were applied during the two-year period prior to the petition date. Page did not personally have access to this information. She asked Hudson if a subpoena had previously been served on BB&T, explaining that the subpoena would have been processed by BB&T's Deposit Compliance Department and one would likely be needed in order to fulfill his request. Upon receiving a copy of the November Subpoena from Hudson, Page forwarded it to the Deposit Compliance Department on December 29, 2015, and asked for records of all payments made by JAT to BB&T from December 21, 2011 — December 21, 2013, **[*8]** including records indicating to which of JAT's accounts, if any, the payments were applied. The Deposit Compliance Department began internal procedures and research of JAT's accounts to generate the requested information.

Page testified that she did not hire outside counsel to respond to the Complaint at this time because, based on correspondence with Hudson and after her review of the Complaint, she was under the mistaken impression that he would forego proceeding with this case until he reviewed the information to be provided and discussed with her the transfers in question. Although this was Page's first experience with a complaint in an adversary proceeding, she had prior experience with other bankruptcy matters and pleadings and believed the parties would be able to resolve this matter without BB&T retaining outside counsel, as she had previously done with other matters.

BB&T failed to timely file an answer to the Complaint and, as a result, Hudson filed an Affidavit of Default on January 28, 2016 on behalf of Plaintiff.[5] A Clerk's Entry of Default was entered the same day.[6] Hudson also filed the Request for Entry of Judgment in the amount of $71,137.30 for voided transfers pursuant **[*9]** to *§ 548(a)(1)*, stating the transfers were made by JAT to BB&T within two years prior to the petition date for obligations due to BB&T from a third party with the intent to hinder, delay, or defraud JAT's existing and future creditors. The Court scheduled a hearing on the Request for Entry of Judgment.

Meanwhile, on February 2, 2016, Page was notified by an associate in BB&T's Deposit Compliance Department that the requested documents were delivered to Hudson on January 29, 2016. The information provided in these documents indicates that of the $71,137.30 demanded in the Complaint and Request for Entry of Judgment, $70,537.30 is accounted for as payments from JAT toward balances on two commercial credit cards and two commercial notes owed pre-petition by JAT. Page testified that the payment information for these two commercial loans was not readily available to her during communications with Hudson in December 2015 because these loans

---

[5] ECF No. 5.

[6] ECF No. 7.

were paid off prior to the petition date, causing them to be removed from BB&T's system and her viewing access without knowing a specific account number to research.

Page did not receive any communications from Hudson after December 2015, but independently [*10] reviewed the Court's docket on February 2, 2016, to discover that a Clerk's Entry of Default had been entered and the Request for Entry of Judgment was scheduled for hearing. At that time, Page engaged Carter as outside counsel. After Carter was unsuccessful with his request to Plaintiff to set aside the Clerk's Entry of Default, BB&T filed the instant Motion on February 4, 2016.

**DISCUSSION AND CONCLUSIONS OF LAW**

**I. SERVICE OF THE COMPLAINT**

BB&T raises issues regarding the validity of the service of the Complaint. Based on the decision of the Court set forth below, analysis of this argument is unnecessary. Further, there is no dispute that BB&T received actual and timely notice of the Complaint in time to file an answer. See Johnson v. BAC Home Loans Servicing, LP, 867 F. Supp.2d 766, 774-75 (E.D.N.C. 2011) ("[W]hen service of process gives a defendant actual notice of the pending action, the courts may construe the Federal Rules of Civil Procedure liberally 'to effectuate service and uphold the jurisdiction of the court, thus insuring the opportunity for a trial on the merits.'" (quoting Bess v. Cnty. of Cumberland, C/A No: 5:10—CV—453—BR, 2011 U.S. Dist. LEXIS 81032, 2011 WL 3055289, at *2 (E.D.N.C. July 25, 2011) (quoting Karlsson v. Rabinowitz, 318 F.2d 666, 668 (4th Cir. 1963)))); In re Anderton, C/A No. 98-41048, 2000 WL 33716970, at *5 (Bankr. D. Idaho Jan. 11, 2000) (denying the defendant's Rule 60(b) motion to set aside a default judgment because even if there [*11] were technical shortcomings of the plaintiff's efforts at service under Rule 7004, they did not materially contribute to the defendant's failure to file a timely answer due to the fact that the defendant conceded that the employee responsible for handling legal process actually received the summons and complaint and forwarded them to her supervisor, who presumably passed the information on to the defendant's attorneys).

**II. PLAINTIFF'S REQUEST FOR ENTRY OF JUDGMENT MUST BE DENIED**

"Entry of default raises no protectable expectation that a default judgment will follow . . ." Colleton Preparatory Acad. Inc. v. Hoover Universal, Inc., 616 F.3d 413, 419 n.6 (4th Cir. 2010) (quoting Johnson v. Dayton Elec. Mfg. Co., 140 F.3d 781, 785 (8th Cir. 1998)).

> The mere fact that a defendant is in default does not entitle the plaintiff to default judgment. Instead, the court must determine whether the default judgment *should* be granted and can conduct a hearing on the matter if it so chooses. Courts are given broad discretion in determining whether a default judgment is proper.

Clemson Grande Lakefront Condos., LLC v. First Fin. Equities Commercial, LLC et al. (In re Clemson Grande Lakefront Condos., LLC), 472 B.R. 703, 705 (Bankr. D.S.C. 2012) (emphasis in original) (internal citations and quotation marks omitted); Kain v. Beneficial S.C., Inc. et al. (In re Kain), C/A No. 08-08404-HB, Adv. Pro. No. 11-80086-HB, 2012 Bankr. LEXIS 6303, [slip op.] at 4 (Bankr. D.S.C. Jul. 10, 2012) ("The court is required to exercise sound judicial discretion in determining whether a default judgment should be entered." (citing [*12] Fed. R. Civ. P. 55(b)(2))). This principle is set forth in Rule 55(b), which governs default judgments:

> **(2) *By the Court*.** In all other cases, the party must apply to the court for a default judgment . . . The court may conduct hearings or make referrals--preserving any federal statutory right to a jury trial--when, to enter or effectuate judgment, it needs to:
>
> **(A)** conduct an accounting;

    **(B)** determine the amount of damages;

    **(C)** establish the truth of any allegation by evidence; or

    **(D)** investigate any other matter.

Fed. R. Civ. P. 55(b)(2). "In determining whether to enter a default judgment, the court is free to consider a number of factors that may appear from the record before it." Kain, Adv. Pro. No. 11-80086-HB, 2012 Bankr. LEXIS 6303, [slip op.] at 4 (citations omitted).

The Complaint seeks to avoid alleged fraudulent transfers pursuant to § 548(a)(1) from JAT to BB&T within two years prior to the petition date allegedly for obligations due to BB&T from a third party with the intent to hinder, delay, or defraud JAT's existing and future creditors.[7] After a review of the evidence presented at the hearing, it is abundantly clear that the Court should not enter the Request for Entry of Judgment due to the fact that the vast majority, if not all, of the transfers to BB&T by JAT more likely than paid **[*13]** then-existing credit cards and commercial loans in the name of JAT. Therefore, the requested relief is not supported by the record before the Court and the Request for Entry of Judgment is denied.

### III. THE CLERK'S ENTRY OF DEFAULT MUST BE VACATED

Pursuant to Fed. R. Civ. P. 55(c), made applicable to this proceeding by Fed. R. Bankr. P. 7055, "[t]he court may set aside an entry of default for good cause . . ." The decision to set aside an entry of default is within the sound discretion of the Court. Payne ex rel. Estate of Calzada v. Brake, 439 F.3d 198, 204 (4th Cir. 2006). However, there are six factors that must be considered in exercising such discretion: (1) whether the party in default has a meritorious defense; (2) whether it acted with reasonable promptness; (3) the personal responsibility of the defaulting party; (4) prejudice to the party; (5) the history of dilatory action; and (6) the availability of less drastic sanctions. Colleton Preparatory Acad., 616 F.3d at 417. No single factor is to be given disproportionate weight in the analysis. Werner v. Carbo, 731 F.2d 204, 207 (4th Cir. 1984) ("these grounds for relief often overlap, and it is difficult if not inappropriate in many cases to specify or restrict the claim for relief to a particular itemized ground") (citations omitted). Doing so **[*14]** "free[s] courts to do justice in cases in which the circumstances generally measure up to one or more itemized grounds." *Id.*

> Rule 60(b) motions request relief from judgment, which implicates an interest in "finality and repose," a situation that is not present when default has been entered under Rule 55(a) and no judgment has been rendered. Therefore, while an analysis under each rule employs similar factors, Rule 60(b)'s "excusable neglect" standard is a more onerous standard than Rule 55(c)'s "good cause" standard, which is more forgiving of defaulting parties because it does not implicate any interest in finality.

Colleton Preparatory Acad., 616 F.3d at 420-21 (citations omitted). The Fourth Circuit has "repeatedly expressed a strong preference that, as a general matter, defaults be avoided and that claims and defenses be disposed of on their merits." *Id.* (citations omitted); Lolatchy v. Arthur Murray, Inc., 816 F.2d 951, 954 (4th Cir. 1987) ("In sum, 'an extensive line of decisions' has held that Federal Rule of Civil Procedure 55(c) must be 'liberally construed in order to provide relief from the onerous consequences of defaults and default judgments" (citations omitted)); Tolson v. Hodge, 411 F.2d 123, 130 (4th Cir. 1969) ("Any doubts about whether relief should be granted should be resolved in favor of setting aside the default so that the case may be heard on the merits.").

### A. MERITORIOUS DEFENSE

---

[7] Plaintiff did not pursue the cause of action pursuant to § 547 in the Request for Entry of Judgment.

The standard for showing **[\*15]** a meritorious defense is not high and requires merely "some possibility" of a result in BB&T's favor at trial. Augusta Fiberglass Coatings, Inc. v. Fodor Contracting Corp., 843 F.2d 808, 812 (4th Cir. 1988) ("The underlying concern is . . . whether there is some possibility that the outcome . . . after a full trial will be contrary to the result achieved by the default." (quoting 10 C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure* § 2697, p. 531 (2d ed. 1983))); *see also* United States v. Moradi, 673 F.2d 725, 727 (4th Cir. 1982) ("[a]ll that is necessary to establish the existence of a 'meritorious defense' is a presentation or proffer of evidence, which, if believed, would permit either the Court or the jury to find for the defaulting party." (citations omitted)). BB&T has proffered evidence and testimony to establish a meritorious defense well beyond this minimum threshold. The record indicates that nearly all of the transfers at issue occurred outside the 90-day preference period and were used to pay other debts owed to BB&T by JAT, not third party obligations. If this matter proceeded to a full trial on the merits, BB&T has shown that there is a high probability it will prevail.

### B. REASONABLE PROMPTNESS

"Whether a party has taken 'reasonably prompt' action, of course, must be gauged in light of the facts and circumstances of each **[\*16]** occasion . . ." Moradi, 673 F.2d at 727. BB&T discovered the default and hired outside counsel to assist it in this matter only five days later. Carter quickly filed the BB&T Motion within seven days after the entry of default was entered. Such prompt action clearly demonstrates a timely effort to set aside the entry of default. Further, BB&T acknowledged the Complaint immediately by contacting Hudson to begin dialogue and provide information.

### C. *Personal Responsibility*

BB&T bears some personal responsibility for its failure to timely respond to the Complaint because it was aware of the action pending against it and the deadline to answer. However, BB&T did not act in bad faith, was discussing this matter with Hudson, and was in the process of providing requested documentation when the Affidavit of Default was filed. Page assumed, incorrectly as the facts now show, that Hudson would review the information provided and then reach out to her to further discuss this matter. This miscommunication between Page and Hudson appears to be the result of a good faith mistake, which BB&T quickly admitted and offered a reasonable explanation.

The "good cause" standard to set aside an entry of default is more forgiving of **[\*17]** a defaulting party's mistake. Colleton Preparatory Acad., 616 F.3d at 420 (finding "good cause" for Rule 55(c) purposes even though the defaulting party "admitted to its mishandling of process, and offered some explanation"). Additionally, no single factor is to be given disproportionate weight in this analysis. Werner, 731 F.2d at 207. Therefore, any responsibility by BB&T for an honest, albeit negligent mistake is not dispositive of the Court's determination here. The Court also notes that from the evidence and testimony presented, it was not unreasonable for Page to believe that Hudson would communicate with her further before requesting a default.

### D. PREJUDICE TO PLAINTIFF

Hudson asserts that the estate has incurred substantial attorney's fees due to BB&T's failure to fully respond to the July and November Subpoenas prior to the filing of this action, in preparing and pursuing the default, and in defending against the BB&T Motion. Plaintiff also claims BB&T's failure to provide the requested information when subpoenaed prevented him from pursuing additional avoidance actions because the statute of limitations has passed.[8] However, on these facts the only prejudice the Court should consider is any prejudice to the Trustee as a result of BB&T's failure to file **[\*18]** a timely answer, which is minimal.

---

[8] The arguments indicate that the pre-lawsuit July and November Subpoenas were to gain information about JAT's accounts that may lead to other potential defendants as well as to explore possible claims against BB&T.

E. HISTORY OF DILATORY ACTION

Dilatory is defined as "designed or tending to cause delay" or "given to or characterized by tardiness." *Dilatory*, BLACK'S LAW DICTIONARY (10th ed. 2014). Plaintiff attempts to use BB&T's responses to the July and November Subpoenas as evidence of a history of dilatory action by BB&T. The Court disagrees. BB&T presented evidence of its good faith efforts to respond to the subpoenas, its failure to understand the Trustee's purpose in making the request, and an explanation as to why the credit card accounts and commercial loans did not appear during an initial inquiry into JAT's accounts. Further, BB&T had no cause to delay because the information ultimately produced appears to be in favor of BB&T. Although BB&T failed to file a timely answer, Page promptly contacted Hudson upon receipt of the Complaint to begin dialogue. Nothing in the record supports a finding of dilatory conduct.

F. LESS DRASTIC SANCTIONS

A less **[*19]** drastic sanction than default is available to Plaintiff. "[S]anctions of a less drastic nature" may include "payment of costs [and] attorneys' fees . . ." *Chandler Leasing Corp. v. Lopez, 669 F.2d 919, 921 (4th Cir. 1982)*; see also *Colleton Preparatory Acad., 616 F.3d at 418* (noting a district court's obligation to consider "an award of attorney's fees and costs" as a sanction less drastic than default); *Hovis v. ITS, Inc. (In re Air South Airlines, Inc.)*, C/A No. 97-07229-W, Adv. Pro. No. 99-80166-W, slip op. at 4 (Bankr. D.S.C. Sept. 1, 1999) (awarding attorney's fees and costs incurred in the preparation and filing of the default and order for judgment as well as in the defense of the motion for relief from the default judgment).

Hudson argues the estate has suffered actual harm as a result of BB&T's failure to file a timely answer. The only possible harm proximately caused by that failure to act would be any costs and expenses incurred from January 28, 2016 to March 1, 2016, associated with the pursuit of the default and the objection to the BB&T Motion. To remedy this harm, upon the filing of an amended affidavit of attorney's fees, the Court will consider an award of reasonable attorney's fees and costs incurred **only** as a result of pursuing the default and objecting to the BB&T Motion. Any fees and costs incurred prior to that period of time **[*20]** or on account of discovery pursuits should not be included.[9]

**IT IS, THEREFORE, ORDERED THAT:**

　　1. Plaintiff's Request for Entry of Judgment is **denied**;

　　2. BB&T's Motion to Set Aside Entry of Default is **granted**. The Clerk's Entry of Default is hereby set aside and vacated. BB&T shall file an answer or other responsive pleading to the Complaint pursuant to *Fed. R. Bankr. P. 7012* within **seven (7) days** from entry of this Order; and

　　3. Plaintiff is entitled to reasonable attorney's fees and costs incurred from January 28, 2016 to March 1, 2016, in pursuing the default and objecting to BB&T's Motion to Set Aside Entry of Default. Plaintiff shall within **fourteen (14) days** from entry of this Order file an amended affidavit of attorney's fees reflecting such attorney's fees and costs incurred only for such efforts. Thereafter, BB&T shall have **seven (7) days** from the filing of the amended **[*21]** affidavit of attorney's fees to object to any of the fees or costs requested therein before entry of an order by the Court.

**AND IT IS SO ORDERED**.

/s/ Helen E. Burris

---

[9] At the hearing, Hudson presented an affidavit of attorney's fees in the amount of $10,889.00 for attorney's fees and costs. This affidavit did not indicate or itemize how these fees were incurred for the Court to determine that it only included fees and costs incurred from January 28, 2016 to March 1, 2016, and associated with the default.

US Bankruptcy Judge

District of South Carolina

---

**End of Document**