IN THE UNITED STATES DISTRICT COURT

FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DAVID J. CATANZARO, ) | Case No. 3:22-cv-1768 |
| Plaintiff, ) | |
| ) | |
| VS. ) | **Honorable Joseph F. Saporito, Jr.** |
| WALMART STORES, INC., ) | |
| WALMART.COM, ) | **Referred to: Chief Magistrate Judge** |
| ALIEXPRESS, ) | **Daryl F. Bloom** |
| MICHAELS STORES, INC., ) | |
| MSPCI, ) | JURY TRIAL DEMANDED |
| WEGMANS FOOD MARKETS, INC., ) | |
| AMAZON.COM, INC., ) | |
| DIAMOND VISION INC., ) | |
| CURRENT MEDIA GROUP INC., ) | |
| USIMPRINTS, ) | FILED |
| STAPLES PROMOTIONAL PRODUCTS, ) | SCRANTON |
| RAKUTEN AMERICAS, ) | |
| PRICE US WHOLESALE, ) | JAN 22 2025 |
| BONANZA.COM, INC., ) | |
| WHOLESALE IN MOTION GROUP, INC., ) | PER   DJ |
| ANYPROMO INC., ) | DEPUTY CLERK |
| DHGATE; ) | |
| and DOES 1 THROUGH 50 ) | |
| Defendants. ) | |

**REBUTTAL TO CORPORATE DISCLOSURE STATEMENT OF**

**DEFENDANT ALIEXPRESS**

The Plaintiff, David J. Catanzaro, hereby submits this detailed and comprehensive rebuttal to the Corporate Disclosure Statement filed by Defendant AliExpress. This

rebuttal challenges the Defendant's assertions regarding their corporate structure and the implications of their disclosed relationships under federal laws governing corporate disclosures and liabilities.

### A.   CORPORATE STRUCTURE AND LEGAL IMPLICATIONS

1.   In response to the Corporate Disclosure Statement filed by Defendant AliExpress, this rebuttal highlights critical aspects of the corporate structure and interconnections with its parent company, AliExpress International E-Commerce Pte. Ltd., which raise significant legal implications under U.S. corporate law. The Plaintiff, David J. Catanzaro, argues that these corporate relationships necessitate a more nuanced examination by the court, potentially affecting liability, jurisdiction, and corporate governance standards.

i.   **Integration of Corporate Entities:**

- **Shared Address and Operations**: AliExpress and its parent company, along with Alibaba Group US (and/or a division thereof), share a common address (400 S El Camino Real #400, San Mateo, CA 94402, United States and/or at 525 Almanor Ave, Suite 400, Sunnyvale, CA 94085 ). This physical co-location suggests a level of operational integration that goes beyond a simple parent-subsidiary relationship, potentially implicating AliExpress in broader corporate activities that align with the judicial perspectives on corporate veil piercing as discussed in *Cedar Point Apartments, Ltd. v. Cedar Point Inv. Corp.*, which emphasizes the significance of integrated operations in determining the separateness of corporate entities.

- **Unified Legal Representation**: The involvement of the Law Office of Chen Yang as the head attorney for AliExpress and the broader Alibaba Group in the

United States further underscores a unified legal strategy that may be pertinent to the application of the alter ego theory. Such integration can be crucial for establishing liability, especially under circumstances where corporate separateness is designed to shield a parent from the liabilities of its subsidiaries.

ii. **Implications for Corporate Veil Piercing:**

- **Legal and Operational Overlaps**: The overlapping legal and operational frameworks between AliExpress and its parent company invite scrutiny under the doctrine of corporate veil piercing. This doctrine allows courts to treat the assets and liabilities of related business entities as one when the subsidiary is not adequately independent from the parent, as per the guiding principles set out in *Sea-Land Services, Inc. v. Pepper Source*. The Plaintiff contends that the Defendant's disclosure fails to adequately distinguish AliExpress's operations and liabilities from those of its parent, raising potential concerns about the appropriateness of veil piercing to ensure justice and liability allocation.

- **Failure to Maintain Corporate Formalities**: The close operational ties and shared corporate governance strategies between AliExpress and its parent entity may demonstrate a failure to maintain separate corporate formalities, providing grounds for disregarding the corporate entity under U.S. law, which seeks to prevent misuse of the corporate form to evade legal obligations or perpetrate fraud.

iii. **Legal Strategies and Corporate Disclosure:**

- **Strategic Legal Postures**: The corporate disclosure strategy adopted by AliExpress, particularly the selective identification of its parent corporation and the omission of details on operational control and policy-making, might be strategically poised to minimize perceptions of liability. This strategy could

potentially influence judicial interpretations of corporate separateness and affect substantive legal outcomes in matters involving corporate liabilities and disclosures as required under Federal Rule of Civil Procedure 7.1.

2. The interconnectedness of AliExpress with its parent company and other entities within the Alibaba Group suggests a corporate structure designed for operational and legal interdependence. This structure mandates a thorough judicial review to determine the appropriate application of corporate liability theories, ensuring that corporate entities cannot unjustly benefit from perceived separateness. The court should consider these factors in any decisions related to the corporate governance and liability of AliExpress in the ongoing litigation.

### B. PRIVACY POLICY AND CONTRACTUAL OBLIGATIONS IMPACT ON JURISDICTION

3. In addressing the Corporate Disclosure Statement of Defendant AliExpress, it is pertinent to examine how the entity's privacy policy and its expressed contractual obligations impact the jurisdictional assertions in this case. This analysis is crucial for the court's understanding of the applicable legal frameworks and AliExpress's adherence to contractual and regulatory obligations that bear on jurisdictional considerations.

i. **Jurisdictional Assertions Based on Contractual Obligations:**
   - According to the privacy policy of AliExpress, as evidenced in **Exhibit A**, the platform explicitly states contractual relationships with consumers in the United

States. This contractual engagement establishes a direct and significant connection to U.S. jurisdiction, particularly under the principles outlined in *International Shoe Co. v. Washington*, which set the standard for determining the presence of sufficient contacts within a jurisdiction to justify the imposition of personal jurisdiction.

- The privacy policy highlights specific obligations regarding the collection, use, and transfer of personal data from U.S. consumers. Such activities enhance the nexus between AliExpress and U.S. jurisdiction, as they involve substantive interactions with U.S. residents, governed by U.S. privacy laws including the California Consumer Privacy Act (CCPA) and potentially the General Data Protection Regulation (GDPR) for residents of the European Economic Area who interact within the U.S.

ii. **Impact of Privacy Policies on Jurisdictional Analysis:**

- Users of the AliExpress platform are often required to agree to terms that include detailed privacy policies as part of their contractual agreement with AliExpress. This agreement, by incorporating privacy practices that comply with U.S. laws, implicitly consents to the applicability of U.S. legal standards, thereby justifying jurisdiction as per *Zippo Manufacturing Co. v. Zippo Dot Com, Inc.*, where the nature and quality of internet-based interactions were used to determine jurisdiction.

- The privacy policy delineates the legal bases for data processing activities, reflecting compliance with specific jurisdictional legal frameworks. This detailed adherence to localized legal requirements not only solidifies the operational footprint of AliExpress in these regions but also enhances jurisdictional claims based on systematic and continuous contacts within the U.S.

### iii. Implications for Jurisdiction from Contractual Practices:

- The enforceability of online privacy policies and terms of service, as legally binding contracts, implicates AliExpress in jurisdictional claims where these documents exert regulatory and operational influence. U.S. courts have consistently upheld that adherence to such policies in consumer interactions can establish the necessary legal contacts for jurisdiction.

- The detailed privacy policy of AliExpress, aimed at protecting consumer data and ensuring transparency, inherently ties the platform's operations to jurisdictions that enforce these protections, notably through consumer protection laws that are vigorously enforced in the U.S.

4. The privacy policy and the contractual obligations of AliExpress substantially contribute to the jurisdictional basis for this case. The explicit acknowledgment of legal responsibilities to U.S. residents, combined with active commercial engagements, justifies the imposition of jurisdiction under established U.S. legal principles. Therefore, this court should consider these elements in assessing the appropriateness of maintaining jurisdiction over AliExpress, in alignment with both federal and state laws governing commercial and data privacy obligations.

### C. MARKET ENGAGEMENT AND LEGAL CONSIDERATIONS

5. In challenging the Corporate Disclosure Statement of Defendant AliExpress, it is imperative to scrutinize their market engagement practices and the associated legal considerations, particularly in relation to their operations within the United States. This analysis is vital to establish the depth of AliExpress's business activities and their consequent legal obligations within U.S. jurisdiction.

i. **Substantial Market Engagement in the U.S.:**

- As evidenced in **Exhibit D**, AliExpress has experienced a significant surge in order volume, contributing to substantial revenue growth. This increase in transactions specifically within the U.S. market not only underscores a deliberate targeting of U.S. consumers but also establishes a continuous commercial presence, which per *Burger King Corp. v. Rudzewicz*, strengthens the case for exercising personal jurisdiction due to substantial and not random, fortuitous, or attenuated contacts.

- The redesign of the AliExpress mobile app to enhance user experience for U.S. customers reflects a tailored approach to meet the specific demands of the U.S. market. This level of customization in service delivery aligns with a strategic business presence, inviting legal scrutiny under U.S. commercial codes and consumer protection laws.

ii. **Legal Implications of Market Behaviors:**

- AliExpress's operations involve significant interactions with U.S. consumers, subjecting it to various federal and state consumer protection laws, including, but not limited to, the Federal Trade Commission (FTC) regulations and state-level consumer protection statutes. These laws mandate that any foreign entity engaged in substantial operations within the U.S. adhere to the same standards as domestic firms, particularly in areas concerning consumer rights and data protection.

- The operation of a large e-commerce platform like AliExpress necessitates adherence to U.S. intellectual property laws. Given the platform's scale and the variety of products offered, compliance with these laws is not only a legal requirement but also a significant operational concern, influencing jurisdictional

authority due to the need for redress available within U.S. courts.

iii. **Implications for Jurisdiction Based on Business Activities:**

- AliExpress's interactions with various U.S.-based businesses and consumers as part of its e-commerce platform operations establish a systematic and sustained economic activity within the U.S. This engagement justifies jurisdiction under the doctrine of *minimum contacts*, as established in *International Shoe Co. v. Washington*.

- The significant U.S. market presence of AliExpress necessitates the availability of U.S. legal systems for dispute resolution involving U.S. consumers. This is aligned with the principle that foreign firms engaging in substantial operations within the U.S. should reasonably anticipate being brought into court in the U.S. for matters arising from such engagements.

6. AliExpress's targeted and substantial engagement in the U.S. market, coupled with specific legal obligations under U.S. laws, provides a robust basis for asserting jurisdiction in this matter. The extent of their market activities within the U.S., alongside their legal responsibilities, warrants a judicial examination under U.S. law, reinforcing the necessity for this Court to maintain jurisdiction over AliExpress.

### D. CULTURAL AND CORPORATE INTEGRATION

7. This section of the rebuttal addresses the cultural and corporate integration of AliExpress within the United States, which not only underscores its substantial business presence but also enhances its accountability under U.S. jurisdiction.

i. **Corporate Cultural Adaptation:**

- AliExpress has tailored its services and products to cater specifically to the

preferences and demands of the U.S. market. This is evident from the redesigned mobile application that focuses on improving the shopping experience for U.S. customers, as noted in **Exhibit E**. Such customization goes beyond mere sales; it represents a strategic integration into U.S. consumer culture, signifying a commitment to the local market that is characteristic of a domestic entity.

- AliExpress's public communications and branding efforts, as reflected in their mission and values statements (**Exhibit F**), emphasize a customer-first approach. This philosophy aligns with predominant U.S. corporate practices, indicating a deliberate alignment with U.S. market norms and consumer expectations.

ii. **Impact on Legal Framework:**

- By adapting its operations to the U.S. market, AliExpress subjects itself to local regulations, including consumer protection laws and e-commerce regulations. The integration of its business practices with U.S. standards mandates compliance with a spectrum of legal requirements, from data protection laws to consumer rights, thereby making it susceptible to U.S. jurisdiction.

- The corporate ethos of "living seriously, working happily," as stated in **Exhibit F**, underscores a commitment to ethical business practices, which includes respecting the legal frameworks of the markets in which AliExpress operates. This commitment should logically extend to recognizing the jurisdiction of U.S. courts over disputes arising from its U.S. operations.

iii. **Jurisdictional Implications:**

- AliExpress's cultural and corporate integration into the U.S. market establishes minimum contacts necessary for the exercise of jurisdiction. The company's deep engagement with U.S. consumers through tailored services and significant sales activities justifies expecting AliExpress to answer legal claims in U.S. courts.

- The principles of predictability and fairness in jurisdiction dictate that a company as integrated into the U.S. market as AliExpress should anticipate being haled into a U.S. court. This is in line with the company's extensive physical and online presence, through which it avails itself of the benefits of the U.S. market.

### E. CONCLUSION

In light of the detailed arguments presented in this rebuttal, it is evident that AliExpress, through its deliberate and sustained engagement within the U.S. market, has established substantial ties that warrant the exercise of jurisdiction by U.S. courts. The defendant's corporate disclosure, while attempting to delineate a structure designed to obfuscate its connections with its parent entities, inadvertently reveals a deep integration into U.S. commercial practices and legal obligations, which cannot be overlooked.

AliExpress has not only marketed its services to U.S. consumers but has actively adapted its operations and corporate policies to align with U.S. consumer expectations and legal standards. This adaptation demonstrates an acceptance of the benefits and responsibilities inherent in the U.S. market, thus satisfying the criteria for establishing a meaningful presence within the jurisdiction.

The relationships and operational frameworks detailed in the defendant's disclosure, combined with the evidence provided, illustrate that AliExpress functions as an integral part of a conglomerate with significant U.S. market activities. This interdependence strengthens the argument for U.S. jurisdiction, based on the principles of fairness and substantial justice.

AliExpress's comprehensive engagement in the U.S. not only enhances its commercial footprint but also imposes an ethical obligation to submit to the jurisdiction of U.S. courts. The company's deep economic and operational roots in the market imply a

readiness to be accountable within the U.S. legal framework, particularly in disputes arising from its extensive dealings with U.S. consumers.

Based on established legal precedents, entities like AliExpress that benefit significantly from a local market are expected to participate in the judicial processes of that jurisdiction. This expectation aligns with the doctrines of fair play and substantial justice, which are cornerstones of U.S. jurisdictional principles.

**In conclusion,** the arguments and facts presented substantiate the plaintiff's position that AliExpress is rightly subject to the jurisdiction of this Court. It is both reasonable and just for this Court to assert jurisdiction and proceed with adjudicating the matters in dispute. Therefore, it is respectfully requested that the Court deny the defendant's motions that contend otherwise and affirm the plaintiff's right to seek redress in this forum.

Dated: January 22, 2025

Respectfully submitted,

By: _____
David J. Catanzaro
Plaintiff *Pro Se*
286 Upper Powderly Street
Carbondale, PA 18407
Phone: (570) 936-9262
E-mail: davidjosephus@aol.com

## CERTIFICATE OF SERVICE

I, David J. Catanzaro, hereby certify that on this day I have served a true and correct copy of the above document to the following parties via electronic mail, where available, and otherwise by first-class mail:

**Defendant's Attorneys:**

Caitlin P. Strauss, Esq.

Saul EWING LLP

1500 Market St. 38th Floor

Philadelphia, PA 19102

Email: caitlin.strauss@saul.com

Phone: (215) 972-7153

Brant C. Hadaway, Esq. (Pro Hac Vice Forthcoming)

DIAZ REUS & TARG, LLP

100 Southeast Second Street

3400 Miami Tower

Miami, Florida 33131

Email: bhadaway@diazreus.com

Phone: (305) 375-9220

Zhen Pan, Esq. (Pro Hac Vice Forthcoming)

Email: zpan@diazreus.com

Phone: (305) 375-9220

Prince-Alex Iwu, Esq. (Pro Hac Vice Forthcoming)

Email: piwu@diazreus.com

Phone: (305) 375-9220

**Other Interested Parties:**

USIMPRINTS

200 E Main Street – Suite 200-17

Franklin, TN 37064

PRICE US WHOLESALE

2240 East 17th Street

Brooklyn, NY 11229

WHOLESALE IN MOTION GROUP, INC.

2240 East 17th Street

Brooklyn, NY 11229

ANYPROMO, INC.

1511 East Holt Blvd.

Ontario, CA 91761

DHGATE

381 Brea Canyon Road

Walnut, CA 91789

This certificate is filed this day with due observance of the requirements regarding the service of documents as stipulated under the relevant federal and state procedural rules.

Dated: January 22, 2025

David J. Catanzaro
Plaintiff *Pro Se*
286 Upper Powderly Street
Carbondale, PA 18407
Phone: (570) 936-9262
E-mail: davidjosephus@aol.com